[No. 2,220. ]

# CALIFORNIA PACIFIC RAILROAD COMPANY *v.* CENTRAL PACIFIC RAILROAD COMPANY OF CALIFORNIA ET. AL.

INJUNCTION IN PROCEEDING TO CONDEMN LAND.—If, in an application by one railroad company, made in the District Court, to condemn the land of another railroad company, the defendant, by way of cross-complaint, sets up facts which would be a legal defense to the petition, upon the hearing on the merits, such facts do not constitute a ground for an injunction, restraining the plaintiff from entering upon or taking possession of the property sought to be condemned.

IDEM.—Any facts in such case which show that the petitioner had no power to condemn the lands of the defendant, or that the lands are not necessary and proper for the purposes named in the petition, can be used on the trial, on the day set for the appointment of commissioners, and there is no necessity for an injunction so far as these facts are concerned.

IDEM.—If, in such case, facts exist which give the defendant a cause of action in equity to restrain the petitioner from acts injurious to the defendant, they must be asserted in an independent action, and cannot be set up by way of cross-complaint in the proceeding for condemnation.

ISSUES IN PROCEEDINGS TO CONDEMN LAND.—In proceedings for the condemnation of land for public use, the Court exercises a limited and statutory jurisdiction, and should confine the issues to matters which are material to and directly connected with the judgment sought.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The petitioner was incorporated under the laws of California, on the 10th day of June, 1865, for the purpose of constructing and operating a railroad through the counties of Solano, Yolo, Sacramento, Sutter and Yuba, from the town of Vallejo, Solano county, to Sacramento city, Sacramento county, and to the city of Marysville, Yuba county. The route of the road from Vallejo extended northerly on the west side of the bay of Suisun, and the Sacramento river. The city of Sacramento is on the east side of the Sacramento river, and at that point, in order to reach the city, the railroad must cross on a bridge to be constructed over the river.

The petitioner desired, in pursuance of the provisions of the Act entitled "an Act to provide for the incorporation

of railroad companies, and the management of the affairs thereof, and other matters relating thereto," approved May 20th, 1861, to acquire, for the construction of its track, and for water stations, depot, machine and workshops, turntables and buildings for the road, certain tracts and lots of land in the city of Sacramento. The defendant was a corporation, organized also under the laws of this State, June 28th, 1861, to construct a railroad from the navigable waters of the Sacramento river east, and its road extended through the city of Sacramento, on the east bank of the Sacramento river. The petitioner also desired to acquire the right to cross the track of the defendant, with the right to cut and adjust the roads of the two companies to each other. The petition was filed October 14th, 1869. October 25th, 1869, an amendment was filed to the petition, stating that on the east bank of the river, where the petitioner desired to place the eastern pier of a bridge, the defendant had, since the filing of the petition, constructed a wharf, extending from the bank to the deep water of the Sacramento river, and that the wharf was constructed to embarrass the proceedings of the petitioner. (See *California Pacific R. R. Co.* v. *Central Pacific R. R. Co. ante,* 528.)

The Central Pacific Railroad Company alone answered. The answer was a cross-complaint, setting up that the defendant owned all the land sought to be condemned; that it had acquired it for railroad purposes, by purchase, by grant from the State of California, and by condemnation for railroad purposes; that it was necessary for defendant's use, and was now in part used for its depots, workshops, turntables, water stations, tracks, side tracks, switches, lazy tracks, and for its yard, and for receiving and discharging freights and passengers, and that the land would, when the plans and intentions of the company were completed, be entirely used for the operation and use of its railroad. That the Sacramento river was a navigable stream, where the tide ebbed and flowed, and that the defendant had constructed wharves along its banks, and laid railroad tracks thereon, for the purpose of receiving freight and passengers from steamboats and vessels, on its cars, and for discharg-

ing freight from its cars.   That the petitioner, without authority of law, was proceeding to obstruct the navigation of the Sacramento River, by driving piles and building piers thereon, for the purpose of constructing thereon a wagon road bridge for the Sacramento and Yolo Bridge Co., to be used for crossing wagons, and that petitioner had contracted with said Bridge Company to build a bridge for it, and to obtain for it the right of the public to have free passage and egress from it on the Sacramento side.   That neither the Bridge Company nor the petitioner had any right to build the bridge.   That petitioner threatened to build the east pier of its bridge where defendant's wharf was, and to take possession of and destroy its wharf and two railroad tracks thereon, and also threatened to take possession of a belt of defendant's said land about three hundred feet wide and eight hundred feet deep from the river back to Fourth street, and that by doing so, it would cut into two parts defendant's railroad yard, leaving its machine shops on one side, and its freight and passenger depots on the other side, and that, if this was done, defendant could not make up its trains without the continual crossing of the land sought to be condemned, and that defendant would be damaged two hundred thousand dollars.

The prayer was for an injunction restraining the defendant from destroying the wharf, and from committing the wrongs recited.   The motion for a preliminary injunction was submitted on the pleadings, and by the Court denied. The defendant appealed.

*Robert Robinson*, for Appellant, argued that the plaintiff could not contract to build bridges, and had no authority to cross the Sacramento river at the place where the bridge was being built, and that the property sought to be condemned was not subject to condemnation; and on the last point point cited *Contra Costa R. R. Co.* v. *Moss*, 23 Cal. 330, and *Lake Merced Water Co.* v. *Cowles*, 31 Cal. 217.

*S. W. Sanderson*, also for the Appellant, argued that the plaintiff, having no right to build the bridge, was not in a

position to condemn the bank of the river, and that the construction of the bridge would be both a public and private nuisance, and therefore the plaintiff could be enjoined; and cited *Blanc* v. *Klumpke,* 29 Cal. 193, and *People* v. *Moore,* 29 Cal. 427.

*George Cadwalader* and *A. P. Catlin,* for the Respondent, argued that the defendant, in a proceeding of this nature, could not, by way of cross-complaint, resort to equity to prevent a hearing; but that the Court must proceed to a hearing of the allegations of the petition, and decide on the matters therein alleged; and that the defendant's remedy was by appeal; and cited Stats. 1861, p. 620. They also argued that equity could not interfere in any form, and cited *San Francisco and Alameda Water Co.* v. *Alameda Water Co.* 36 Cal. 639.

By the Court, McKINSTRY, J.:

The plaintiff filed its petition in the District Court, asking for the condemnation of certain lands of the defendants; to which one of the latter, the Central Pacific Railroad Company, answered by cross-complaint. The cross-complaint concludes with a prayer, which is, in effect, that petitioner be restrained from continuing the proceedings already commenced, and that the petition for condemnation be denied; also, that "the petitioner be enjoined from building, constructing, or maintaining a bridge in front of the defendant's wharf." This appeal is from an order denying an injunction preliminary to the final hearing in the Court below. It is obvious, that so far as the application is based on the averment of facts which would constitute a legal defense to the petition when the matter should come on for hearing upon the merits, the District Court committed no error in refusing the temporary injunction. The cross-complaint does not refer to an order placing the petitioner in possession of the premises of the defendant, nor does the defendant base its claim to affirmative relief upon the existence of such an order. The injury alleged to be

threatened (with the exception hereinafter mentioned) is an injury which will be done under the final order of condemnation, if the order shall be granted. Any facts, therefore, which will induce the District Court to refuse the order of condemnation will prevent the injury, and these facts can be presented at the final hearing.

The portion of the defendant's prayer, above quoted, which relates to the building of a bridge, is based upon allegations in the cross-complaint, which show, as defendant claims, that the petitioner has commenced the erection of a "wagon-road bridge," to abut upon the lands of defendant sought to be condemned; that the petitioner has no legal right to erect the bridge; and that the same is obstructing, and will destroy, the navigation of the river in front of that portion of the defendant's premises, which is used for the purpose of receiving into its cars freight and passengers from steamboats and vessels lying at the wharf, and of discharging freights and passengers.

In so far as the facts thus alleged show that the petitioner has no power to condemn the lands of defendant, or that the lands are not necessary or proper for the purposes named in the petition, they also could be used at the trial before the Court on the day set for the appointment of commissioners, and there was no necessity for an injunction.

It will be said that the defendant has an independent cause of action against the petitioner, and that it may justly complain of an obstruction to navigation, which will render its wharf property valueless as a shipping point. If the facts alleged constitute ground for an independent bill, it does not follow that they can be asserted in this proceeding, by way of cross-complaint. If an analogous case had been commenced in the County Court (which has jurisdiction of all special cases not otherwise provided for,) a cross-complaint, in the nature of a bill of equity, would not be possible, because that Court has no power to entertain it. No such constitutional inhibition is applicable to the District Court; but in these special cases, that Court exercises a limited and statutory jurisdiction, and should confine the issues to matters which are material to and directly con-

nected with the judgment sought by one party and opposed by the other.

As we have said, if the want of power to build the bridge affects the petitioner's right to have the property of defendant condemned to public use, such want of power can be gone into when the defendant appears to oppose the appointment of commissioners; if the want of power to erect the bridge does not affect the condemnation proceedings, it is not a matter proper to be considered in such proceedings.

The order denying the injunction is affirmed.

Neither Mr. Justice CROCKETT, nor Mr. Justice RHODES, expressed an opinion.